# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| COUNTY OF JIM HOGG,<br>　　　　Plaintiff,<br><br>　v.<br><br>PURDUE PHARMA L.P., *et al.*,<br>　　　　Defendants. | Civil Action No. 4:19-cv-02816<br><br>The Honorable Lee H. Rosenthal |

## SUPPLEMENTAL NOTICE IN SUPPORT OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant Walgreens Boots Alliance, Inc. ("Walgreens") gives this Supplemental Notice in Support of Removal regarding the instant action. On July 31, 2019, Defendant CVS Health Corporation ("CVS") removed this action pursuant to the Class Action Fairness Act ("CAFA") from the 152nd Judicial District Court of Harris County, Texas, to this Court. Walgreens submits this supplemental notice to identify an alternative basis for federal jurisdiction, namely federal question jurisdiction. 28 U.S.C. § 1331.

As grounds for removal, Walgreens states:

1. Removal is timely because Plaintiff has not yet served Walgreens. Copies of the state court dockets are attached as **Exhibit A**.

2. Plaintiff's claims arise under federal law and in effect allege that Walgreens and all other Defendants violated and are liable under a federal statute, the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.* (the "CSA") and its implementing regulations. *See* Pet. ¶¶ 16, 150, 206, 232.

3. This Court has original jurisdiction over the subject action pursuant to 28 U.S.C. § 1331 since it presents a federal question. As alleged, this suit falls within the CSA, which thus supplies this federal question.

4. Venue is proper. Pursuant to 28 U.S.C. § 1441 *et seq.*, this case may be removed from the 152nd Judicial District Court of Harris County, Texas to the United States District Court for the Southern District of Texas, Houston Division as the action is pending within the district.

## II. NATURE OF REMOVED ACTION

5. On or about June 14, 2019, County of Jim Hogg ("Plaintiff") filed *County of Jim Hogg v. Purdue Pharma L.P., et al.* in the District Court for Jim Hogg County, Texas for tort claims relating to prescription opioid medications. The court assigned the case Cause No. CC-19-71. The case was later transferred to the Texas Opioid MDL in the 152nd Judicial District Court of Harris County, Texas under Cause No. 2019-49060.

6. The Petition asserts claims against three groups of Defendants.[1]

7. The first group of Defendants, "Manufacturer Defendants," consists of Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Teva Pharmaceutical Industries Ltd (incorrectly named as "Teva Pharmaceutical Industries, Ltd." in the Petition), Teva Pharmaceuticals USA, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Abbvie Inc., Knoll Pharmaceutical Company, a wholly-owned subsidiary of Abbvie Inc., Allergan plc f/k/a Actavis plc, Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson

---

[1] Teva Pharmaceutical Industries Ltd and Teva Pharmaceuticals USA, Inc. are named defendants but not specifically placed in any category. *Id.* ¶ 47A.

Pharmaceuticals, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Mallinckrodt plc. Pet. ¶¶ Introduction, 26-39.

8.  The second group of Defendants, "Distributor Defendants," consists of McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Drug Corporation. *Id.* ¶¶ Introduction, 40-42.

9.  The third group of defendants, "Retailer Defendants," consists of CVS Health Corporation, CVS Pharmacy, Inc., Walgreens Boots Alliance, Inc., and Walmart Inc.[2] *Id.* ¶¶ Introduction, 43-47.

10. The Petition asserts seven causes of action against Walgreens and the other Retailer Defendants: (1) Public Nuisance; (2) Common Law Fraud; (3) Negligence; (4) Gross Negligence; (5) violations of the Texas Controlled Substances Act; (6) Unjust Enrichment; and (7) Civil Conspiracy. *Id.* ¶¶ 176-232.

11. The thrust of Plaintiff's allegations against Walgreens and the other Retailer Defendants is that "[i]n their role as distributors, The Retailer Defendants joined the race to distribute opioids into Jim Hogg County by continuing to place orders for opioids that were destined for diversion." Pet. ¶ 16. Plaintiff also alleges that "Retailer Defendants herein failed to properly report all evidence of diversion, thereby causing improper and invalid opioid distribution . . ." and "fail[ed] to monitor, detect, investigate, and report suspicious orders of prescription opiates . . ." *Id.* ¶ 150, 232. This conduct allegedly caused Plaintiff damages in the form of expenses expended for medical insurance claims for opioids that were not medically necessary, as well as increased costs of social services, emergency services, health systems, law enforcement, and treatment facilities. *Id.* ¶¶ 21, 174, 180.

---

[2] This Defendant is incorrectly named in the Petition as Wal-Mart Stores, Inc. *Id.* ¶ 47.

12.     Plaintiff's tort claims state a federal question because they are premised on the breach of duties whose only possible source is the CSA.  Plaintiff explicitly pleads that (1) "[e]ach defendant disregarded its legal duty to report suspicious opioid prescriptions"; (2) "Distributor Defendants and Retailer Defendants have breached their duty by failing to prevent or reduce the distribution of opioids or to report the increase in the distribution and/or sale of opioids"; and (3) defendants "fail[ed] to monitor, detect, investigate, and report suspicious orders of prescription opiates . . ." Pet. ¶¶ 15, 206, 232.

13.     Although Plaintiff purports to disavow stating a federal question, *id.* ¶ 215, fn. 41, Plaintiff identifies no state law—common law or statute—that gives rise to these purported duties regarding the distribution of opioids that Retailer Defendants allegedly breached.  Plaintiff cites the Texas CSA, but that statute simply requires distributors to abide by their records and reporting obligations under the federal CSA.  The other Texas Code provisions cited by Plaintiff do not establish any of the alleged duties related to distribution either.  Pet. ¶¶ 17, 142-47, 153, 216-220.  In fact, the Petition identifies no provision of the state statute or regulation that impose an independent duty to monitor, investigate, and report suspicious orders of controlled substances or to prevent diversion.

14.     Further underscoring the federal source of the duties Plaintiff alleges are the nearly 2,100 cases currently pending in the Multidistrict Litigation in the U.S. District Court for the Northern District of Ohio against many of these very same Defendants.  *In Re: National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017) (forming a multidistrict litigation and transferring opioid-related actions to the Honorable Dan A. Polster).  Plaintiff's allegations are nearly identical to the obligations certain Defendants in the MDL are purportedly bound to by virtue of the CSA and its regulations.  *See, e.g.*, 21 U.S.C. § 823(b), (e) (identifying the question

whether a distributor has maintained "effective control against diversion" as one factor the DEA Administrator may consider in evaluating whether the distributor should be licensed to operate); *id.* § 832 (imposing requirements to identify and report suspicious orders); *id.* § 842(c)(1)(B) (setting penalty for failure to comply with requirements related to suspicious order or for failing to "maintain effective controls against diversion of opioid"); 21 C.F.R. § 1301.74(b) (requiring distributors of controlled substances to "design and operate a system" that identifies "suspicious orders of controlled substances" and to report such orders to the DEA).

15. Because any duties relating to diversion of controlled substances and reporting and shipping "suspicious" opioid medication orders arise, if at all, exclusively from federal law—the CSA and its implementing regulations—Plaintiff necessarily pleads that alleged violations of federal law form the basis for its claims.

16. Walgreens has not responded to the Petition in state court because Walgreens has not been served.

17. On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to the Honorable Dan A. Polster in the Northern District of Ohio, pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017). Nearly 2,100 opioid-related actions are currently pending in the MDL, many of which were transferred following removal from state court to federal court, including United States District Courts within the Fifth Circuit.

18. Defendant CVS removed this action on July 31, 2019, on the basis that it constitutes a representative "class action" under CAFA. Dkt. 1.

19. In accordance with 28 U.S.C. § 1446(a), copies of all state court process, pleadings, and orders need not be attached as Walgreens has not yet been served.

### III. TIMELINESS OF REMOVAL

20. Walgreens was not served with the Petition.

21. In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed because Walgreens has not been served. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

### IV. PROPRIETY OF VENUE

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the 152nd Judicial District Court of Harris County, Texas, where the state court action was pending prior to removal, is a state court within this federal district and division.

### V. BASIS OF REMOVAL

23. In addition to the basis asserted in CVS's notice of removal, removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

24. The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

25. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

26. Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To

bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[3]

### A. Plaintiff's Claims Raise a Federal Issue that is Necessarily Raised, Actually Disputed, Substantial, and Capable of Resolution in Federal Court.

27. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

---

[3] Walgreens need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior holdings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "'Divestment of district court jurisdiction' should be found 'no more readily than 'divestment of state court jurisdiction,' given 'the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331.'" 565 U.S. 368, 379 (2012) (alterations omitted) (quoting *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 523 (3d Cir. 1998) (Alito, J., dissenting)).

28. Where, as here, a purported state law claim is premised on violations of a duty contained in a federal statute, a federal court has jurisdiction over that claim. *See Bd. of Commissioners of Se. La. Flood Protection Authority-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) (concluding that federal question jurisdiction exists because claims were premised on failure to satisfy a standard of care established in federal statute). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that the duty would have to be drawn from federal law." *Id.* at 723. A claim premised on the breach of such a duty "cannot be resolved without a determination whether . . . federal statutes create [such] a duty," and therefore necessarily raises a federal question. *Id.*; *see also Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (plaintiff's state law claims gave rise to federal question jurisdiction because resolution of claims relied on duty contained in federal law).

29. As set forth below, all four requirements for federal jurisdiction over Plaintiff's tort claims are satisfied.

30. Although Plaintiff ostensibly pleads its tort claims against Retailer Defendants as state law claims, it bases the underlying theory of liability on alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA.

31. Specifically, Plaintiff pleads that Retailer Defendants violated federal law with, among others, the following allegations:

    a. "In their role as distributors, The Retailer Defendants joined the race to distribute opioids into Jim Hogg County by continuing to place orders for opioids that were destined for diversion." Pet. ¶ 16.

    b. "Retailer Defendants herein failed to properly report all evidence of diversion, thereby causing improper and invalid opioid distribution . . ." *Id.* ¶ 150.

      c.      "Distributor Defendants and Retailer Defendants have breached their duty by failing to prevent or reduce the distribution of opioids or to report the increase in the distribution and/or sale of opioids." *Id.* ¶ 206.

      d.      Defendants "fail[ed] to monitor, detect, investigate, and report suspicious orders of prescription opiates . . ." *Id.* ¶ 232.

32. The source of the asserted legal duties to prevent diversion and to monitor, investigate, and report suspicious orders of controlled substances is the CSA and its implementing regulations. *See* 21 U.S.C. § 823(b), (e); *id.* § 832; *id.* § 842(c)(1)(B); 21 C.F.R. §§ 1301.71, .74(b).

33. The source of the asserted legal duty to monitor, investigate, and report shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, the DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

34. Plaintiff's theories of liability against Retailer Defendants, as pleaded in the Petition, are thus predicated on allegations that they breached alleged duties under the CSA to implement effective controls against diversion and to detect and report "suspicious" orders for prescription opioids.

35. The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

36. ***First***, Plaintiff's claims "necessarily raise[]" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question. *See Bd. of Commissioners*, 850 F.3d at 722-23 (federal question necessarily raised where negligence and public nuisance claims relied on the court's interpretation of the scope of a duty of care contained in federal law); *Hughes*, 478 F. App'x at 170-71; *see also N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021-23 (2d Cir. 2014) (a duty derived from the Exchange Act to operate a fair and orderly market underpinned plaintiff's contract and tort claims and therefore necessarily raised a federal question); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

37. Plaintiff's claims against Retailer Defendants require Plaintiff to establish that they breached duties established exclusively under federal law by failing to monitor, investigate, and report shipments of otherwise lawful orders or by otherwise failing to maintain controls against diversion.

38. The Petition cites to various Texas laws it claims impose a duty on distributors of prescription medications to monitor prescription orders, but none actually does. Pet. ¶¶ 16-17.

This is because, as explained above, these duties necessarily arise under the federal CSA and regulations.

39. While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here necessarily relies on violations of federal law as the basis for its purported state-law tort claims.[4]

40. Plaintiff moreover "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Hughes*, 478 F. App'x at 171 (quoting *Franchise Tax Bd.*, 463 U.S. at 22).

41. In sum, despite Plaintiff's attempt to artfully omit any federal question, the Petition necessarily raises a federal issue—namely, whether Retailer Defendants violated the CSA.

42. *Second*, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the CSA and whether Retailer Defendants violated any duties to monitor, detect, investigate, and report suspicious orders under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

---

[4] Furthermore, it is not necessary for federal jurisdiction that Walgreens establish that *all* of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least some counts against Walgreens, it has supplemental jurisdiction over Plaintiff's remaining counts against Walgreens and the other Retailer Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

43. ***Third***, the federal issue presented by Plaintiff's claim is "substantial." [5] "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Id.* at 260-61 (first quoting *Grable*, 545 U.S. at 315; then quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312; *see also Willis of Tex., Inc. v. Stevenson*, No. H-09-cv-0404, 2009 WL 7809247, at *5 (S.D. Tex. May 26, 2009) ("The Fifth Circuit has held that a claim is substantial enough to support federal question jurisdiction if the issue raised is not wholly insubstantial, obviously frivolous, plainly insubstantial, or obviously without merit.").

44. Plaintiff's theories of liability necessarily require that a court determine a question relating to the important federal issue of regulation of controlled substances. Indeed, Congress recognized the importance of a nationwide approach to controlled substances in enacting the CSA. H.R. Rep. No. 1444, 91st Cong., 2nd Sess. (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72 (noting one purpose of the CSA was "provid[e] the . . . drug industry with a *unified approach* to narcotic and dangerous drug control" (emphasis added)).

---

[5] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the underlying merits of Plaintiff's claims and has no bearing on the strength of those claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

45. The text of the CSA itself notes the federal interest in regulating controlled substances in a uniform manner. 21 U.S.C. § 801 (recognizing the illegal uses of controlled substances "have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic"). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

46. Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In *Grable*, the Supreme Court held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g., Ranck v. Mt. Hood Cable Reg. Comm'n,* No. 3:16-cv-02409-AA, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

47. Removal is especially appropriate here because Plaintiff's action is one of thousands of similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff claims that both the "opioid epidemic" and Defendants' alleged misconduct occurred on a national scale. Pet. ¶¶ 2, 60. The MDL bellwether proceedings have substantially advanced and are set for trial in October 2019.

48. ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements in a manner in tension or in conflict with the way the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore properly exercised under § 1331 to resolve "disputed issues of federal law" under the CSA.

49. In sum, removal of this action is appropriate because Plaintiff's "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also See Bd. of Commissioners*, 850 F.3d at 722-23; *Hughes*, 478 F. App'x at 170-71; *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006))).

### B. The Court can Exercise Supplemental Jurisdiction.

50. To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), which grants district court jurisdiction over state claims forming part of the same case or controversy. *See Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

51. It is not necessary for federal jurisdiction that Defendants establish that *all* of Plaintiff's counts against them raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997). Instead, "federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact." *Id.* at 164-65 (internal quotation omitted); *see also Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rough Par.*, 373 F. App'x 438, 441 (5th Cir. 2010) (exercising jurisdiction to review state law claims even though federal law claims were not on appeal because the district court had properly exercised supplemental jurisdiction over the state law claims).

52. Because, as explained above, the Court has original jurisdiction over at least some counts against Walgreens, it has supplemental jurisdiction over Plaintiff's remaining counts against Walgreens and the other Retailer Defendants, including the putative state law pharmacy claims against the Retailer Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

53. The presence of state law claims, if any, therefore does not defeat this Court's original jurisdiction over the federal claims.

## VI. OTHER REMOVAL ISSUES

54. Under 28 U.S.C. § 1446(b)(2)(A), all Defendants that have been properly joined and served must join or consent to removal.

55. The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below: McKesson Corporation.

56. The remaining Defendants have not been properly served, and thus their consent to removal is not required. Nevertheless, out of an abundance of caution, Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Teva Pharmaceutical Industries Ltd, [6] Teva Pharmaceuticals USA, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Allergan plc f/k/a Actavis plc, Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Actavis LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Mallinckrodt plc, AmerisourceBergen Drug Corporation, CVS Health Corporation, CVS Pharmacy, Inc., and Walmart Inc. consent to removal. The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

57. By filing this Notice of Removal, Walgreens and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process. If any question arises as to propriety of removal to this Court, Walgreens requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

58. Pursuant to 28 U.S.C. § 1446(d), Walgreens will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

59. Walgreens reserves the right to amend or supplement this Notice.

---

[6] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States. Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

**WHEREFORE**, Walgreens hereby asserts that, should the court determine it does not have subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332(d) and 1453(b), it alternatively has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1441.

DATED: August 30, 2019

**FERNELIUS SIMON MACE ROBERTSON PERDUE, PLLC**

By: */s/ Joel C. Simon*
Joel C. Simon
State Bar No. 24046850
joel.simon@trialattorneytx.com
Stephen M. Fernelius
State Bar No. 06934340
steve.fernelius@trialattorneytx.com
1221 McKinney, Suite 3200
Houston, Texas 77010
Telephone: 713-654-1200
Telecopier: 713-654-4039

Lester C. Houtz*
Alex J. Harris*
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202
Tel: (303) 592-3177
Fax: (303) 592-3140
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Walgreens Boots Alliance, Inc.*

**Consent to Removal:**

*/s/ Craig Smyser*
Craig Smyser (SBN 18777575)
Tyler G. Doyle (SBN 24072075)
David Isaak (SBN 24012887)
Razvan Ungureanu (SBN 24085630)
Kristin Adler (SBN 793233)

Michelle S. Stratton (SBN 24085606)
Crystal Robles (SBN 24083754)
Smyser Kaplan & Veselka L.L.P.
717 Texas, Suite 2800
Houston, TX 77002
Phone: 713-221-2300
Fax: 713-221-2320
csmyser@skv.com
tydoyle@skv.com
disaak@skv.com
razvan@skv.com
kadler@skv.com
mstratton@skv.com
crobles@skv.com

*Counsel for McKesson Corporation*

**CERTIFICATE OF SERVICE**

I, Joel C. Simon, hereby certify that the foregoing document will be served via the Court's ECF system to ECF registrants and/or via U.S. Mail.


*/s/ Joel C. Simon*